WELCH VS. THE TOWN OF SUGAR CREEK.

(1, 2) *Evidence.*—(3) *Court and Jury.*—(4–6) *Volunteer's claim to bounty. Conditions of liability.*

1. One who has put in evidence a certificate from the adjutant general's office of his enlistment in the military service of the United States, is not bound by the dates in said certificate, but may show by parol the time when he was actually *mustered in*, where that is material.

2. Declarations made by the assignor after his assignment of a claim, are not admissible in evidence against the assignee; and where the question put to a witness is in such a form as to call for declarations made *after* as well as *before* the assignment, there is no error in overruling it.

3. Where there was sufficient evidence to go to the jury tending to show that plaintiff, suing as assignee of several claims, would have an absolute right, against his assignors, to the amount which he might recover, a motion to dismiss the complaint on the ground that he was not the sole party in interest, was properly denied.

4. Where one enlisted in the service of the United States and had himself credited to a certain town, and notified the town officers of the fact, it was not necessary, in order to entitle him to a bounty offered by the town that he should "*accompany such notice* with evidence sufficient to warrant the officers in paying him the bounty." It was sufficient that the proofs were furnished before the bounty was paid.

5. Persons who thus enlisted and were credited to the town, with knowledge of and with the intention of obtaining the bounty offered by such town, and who gave notice to the proper town officers, became entitled to the bounty in the order of time in which they severally gave such credits to the town and gave notice thereof, unless the town had already filled its quota by procuring the proper number of men to be enlisted, mustered into service, and credited to it.

6. After notice duly given (which need not be in writing), the town officers were bound to inquire into the facts alleged in such notice; and the town became liable, if the facts were as stated.

Welch vs. The Town of Sugar Creek.

APPEAL from the Circuit Court for *Walworth* County.

On the 30th of January, 1864, the defendant town voted to "raise a tax of $200 to be paid to each volunteer that should thereafter enlist and be accepted into the United States service, and be credited to" said town; "and that to each volunteer so enlisting town orders might be issued, payable after the [then] next annual tax was collected; the number of volunteers to be paid being limited to twelve." The plaintiff and three other persons, Jacobson, Parrish and Gates, subsequently re-enlisted in the service, and were credited to the defendant town; and on the 20th of December, 1869, the three persons last named executed to the plaintiff an assignment in the following form: "For value received we hereby assign and set over to *William H. Welch* our claims for the sum of $200 each, and interest from January, 1865, against the *Town of Sugar Creek*; being the amount of bounty due each of us from said town on account of our enlistment and credit to said town under resolution of said town, dated January 30th, 1864." The present action was brought to recover the amount of plaintiff's own claim, with that of the three claims assigned to him.

The complaint alleges that on or about February 13, 1864, *with notice of said offer, and with a view to obtain the bounty* so offered, plaintiff and his assignors, being residents of the defendant town, each duly enlisted and was accepted into the military service of the United States, etc., and each was credited to the defendant town, etc.; that said town *was immediately notified* of such enlistment and credits, and that such enlistment and credits were *the first* after said meeting of January 30, 1864. Demand and refusal of payment, and the assignment to plaintiff of the three other claims, were also duly alleged. The answer denies all these averments except that of demand and refusal; and it alleges: 1. That soon after said meeting of January 30, 1864, and before the town had any notice that plaintiff and his said assignors had enlisted and become credited to the town, defendant had procured the enlistment of other men sufficient to fill

its quota, and had become liable to pay, and did pay, the bounties to such other enlisted men.    2. That plaintiff was not the sole party in interest, but that Jacobson, Parrish and Gates retained an interest in their respective claims.

On the trial, plaintiff put in evidence, 1. The adjutant-general's certificate, showing, among other things, that ten persons therein named were enlisted in the United States service and credited to the defendant town as volunteers or re-enlisted veterans, at certain specified dates, ranging from the 2d to the 16th of February, 1864. From this certificate it appeared that Gates was enlisted on the 2d, Jacobson on the 6th, and Parrish and the plaintiff on the 13th of said month. 2. A deposition of one Kingman, that he was captain of Company H in the 13th Regiment of Wisconsin volunteers, in which company and regiment the plaintiff and his said assignors belonged; that they re-enlisted in the United States service and became credited to the defendant town in February, 1864; that Gates and Jacobson mustered into the service on the 10th, and Parrish and plaintiff on the 15th of said month; that *before they were mustered in,* he (deponent) had received a letter from a resident of the defendant town, informing him of the offer of said bounty, and that he communicated the information to said veterans; that Gates and Jacobson re-enlisted on the 2d and 6th of February, and although they were not mustered in until the 10th, yet this mustering in took effect from the date of their enlistment; and that deponent, in the latter part of said month of February, as the authorized agent of said veterans, notified the supervisors of the defendant town of their re-enlistments and credits, and demanded the bounty for them, which was refused. 3. The testimony of the plaintiff and his said assignors as to the fact of their re-enlistment, crediting to the defendant town, and mustering in at the several times above stated. On the direct examination of Jacobson and Parrish, defendant objected to their testifying as to the date of their *mustering in,* on the ground that this was a matter of record, and such testimony was

Welch vs. The Town of Sugar Creek.

not the best evidence; but the objection was overruled. 4. The testimony of the father of Captain Kingman above named, that he was present at said town meeting of January 30, 1864, and on the same evening wrote to Captain Kingman, informing him of the bounty offered by the town, and that he mailed the letter the same evening, and it would go by the mail on February 1st. 5. The assignment above described.

For the defendant, one Edwards testified that he was chairman of the board of supervisors of said town in 1864; that, as such chairman, on the 1st or 2d of February, 1864, he entered into a written contract with one McCrackin, for twelve volunteers to fill the quota of the town; "that the men were furnished according to contract, and town orders issued and paid; and that part of said men were put in before the plaintiff and his associates were credited to said town, and part after such credits." The court refused to allow testimony showing that at said town meeting of 30th January, a resolution was offered and voted down, declaring that the offer of bounty should apply to re-enlisted veterans (such vote not having been recorded), unless accompanied by proof that plaintiff and his assignors had notice of such vote before their re-enlistment. It also sustained plaintiff's objection to a question put to one of defendant's witnesses as to whether he (the witness) heard Parish "state last winter [viz., the winter of 1869–70], anything about his claim — whether he had any against the town or otherwise? The objection was made upon the ground that declarations of the assignor, made after the assignment, were not admissible against the plaintiff. The defendant also called and examined the plaintiff and his assignors, with a view to showing by them that the assignment aforesaid was not absolute, but that there was some agreement between the parties by which said assignors really retained an interest in their respective claims. The evidence of these witnesses need not be stated. The court afterwards refused to admit evidence offered by defendant of declarations made by the assignors after the assignment, to show that such

assignment was not absolute; and it overruled a motion to dismiss the complaint on the ground that it appeared that plaintiff was not the sole party in interest.

The court instructed the jury, *inter alia*, as follows:

" Upon the matter of the assignment of the claims of Parrish, Gates and Jacobson to the plaintiff, you have the written assignment to the plaintiff signed by these persons, and the testimony of the several witnesses. The assignment is absolute in its terms and fair on its face, and is sufficient in law to convey the entire interest of the owners of those claims to the plaintiff. Nevertheless, if these claims were assigned to the plaintiff merely for the purpose of collection, with the understanding that the plaintiff was to collect them and account to the original owners for the proceeds, the plaintiff in such case would not be the owner of them, and would have no right to sue and recover on them in his own name. But in order to transfer the title to these claims to the plaintiff, it was not essential that anything should have been paid down for them; nor even that there should have been any agreement to pay for them at all. It was competent for the owners of the claims to assign them to the plaintiff without any consideration, as a gift, or with the understanding that he was to pay for them what they were reasonably worth, or whatever the plaintiff should see fit in his discretion to pay at any future time, or after they should be collected. If there was an absolute transfer of the claims to the plaintiff, either as a gift or sale, without any agreement that they were to be taken by him merely for collection, he would be entitled to recover on them in his own name, provided they were legal claims against the town in the hands of the original owners."

The instructions given at the request of the respective parties, and those requested by defendant, but refused, will appear from the opinion.

Verdict and judgment for the plaintiff, for the full amount claimed : and defendant appealed.

*H. S. Winsor*, for appellant, argued that the question of the *time* when Jacobson and Parrish were mustered in was material, and the best evidence should have been given, viz., the record in the adjutant general's office at Madison, or in the war office at Washington; that the plaintiff was also bound by the adjutant general's certificate, which he had .already put in evidence; that the question as to what a witness had heard Parrish say during the winter of 1869-70, should not have been overruled, as it did not necessarily call for declarations made after the assignment; that it was apparent from the testimony of the pretended assignors that the assignment was a sham, and the court should have granted the motion to dismiss the complaint; and that a bare " notice " to the town officers that persons had enlisted, without any evidence to support it, ought not to be held sufficient to bind the town to the payment of bounties, and therefore the court erred in refusing the second instruction asked by defendant, and in giving the instruction upon the same point asked by plaintiff.

*Spooner & Harkness*, for respondent, contended that plaintiff might use the adjutant-general's certificate to show that he and his assignors had been duly credited to the defendant town, without being bound by the dates of such credits as therein stated, and might show by other evidence the date of their mustering in, before which time such credits could not properly be given (*Buck v. Cole*, 4 Sandf., 79; *Draper v. Snow*, 20 N. Y., 331, 333; 2 Parsons on Con., 66; 3 Phil. Ev., 4th Am. ed., 143); that the parties here, being both strangers to the enlistment contracts of plaintiff's assignors, are not estopped from showing the facts (2 Parsons on Con., 68, 69); and that evidence of the declarations of assignors, made after the assignment, was properly excluded. *Paige v. Cagwin*, 7 Hill, 361; *Brown v. Mailler*, 12 N. Y., 118; *Bates v. Ableman*, 13 Wis., 644; *Grant v. Lewis*, 14 Wis., 487; *Bogert v. Phelps*, id., 88.

COLE, J.   We really can see no force in the objection which

was taken to the question asked the witness Jacobson as to the time he was mustered into the service of the United States. The objection was, that this was not the best evidence of the time when he was mustered in, and that the muster rolls should have been produced, which would show the time. The plaintiff had already put in evidence the certiffcate of the adjutant general of the state, which purported to show when the witness, Gates, Parrish, and the plaintiff were re-enlisted. But it is very plain that the plaintiff was not bound by the dates in this certificate. As is well observed in the brief of the counsel for the plaintiff, the record frcm the adjutant general's office is not a record of a contract; it was not signed by the soldier, and there is no reason why he should be bound by the dates there contained. Even in contracts of the most solemn kind, where the date of their execution becomes material, it may be proven by parol, " not merely to supply an omission where the paper itself is without date, but in opposition to the date, where it contains one. The time when a contract is executed is no more a part of the contract than the place where it is executed." SELDEN, J., in *Draper v. Snow*, 20 N. Y., 331, 333; *Breck v. Cole*, 4 Sandf. (S. C.), 79. And for still stronger reasons should the soldier be permitted to show, even by parol evidence, when he was actually mustered into the service, whenever that fact becomes material. For, as we understand, the practice of the general government was not always to muster the soldier in on the same day he signed the enlistment paper. From necessity some days would frequently intervene before the mustering officer could have the proper medical examination made. We therefore think there was no error in allowing the witness to testify to the time he was mustered into the service.

The next error relied on by the defendant is, the exclusion of the question asked the witness Kinney. For the purpose of showing that Parrish had no claim for bounty against the defendant, this witness was asked whether he heard " Parrish state

last winter anything about his claim—whether he had any against the town, or otherwise?" For the most obvious reasons this question, in the form in which it was put, was clearly objectionable. The plaintiff had already shown a written assignment by Parrish to him of the former's claim against the town, which assignment bore date December 20, 1869. Now declarations made by Parrish after he had assigned his claim, could not be admitted to affect the rights of his assignee. The question called for declarations made "last winter," that is, declarations which might have been made after the assignment. The cases of *Bates v. Ablemann*, 13 Wis., 644; *Bogert v. Phelps*, 14 id., 88; and *Grant v. Lewis*, id., 487, show that there was no error in this ruling of the court.

The next objection taken by the defendant is, the refusal of the court to dismiss the complaint on its motion, for the reason that the testimony showed that the plaintiff was not the sole party in interest. The court had previously held that though the assignment by Gates, Parrish and Jacobson to the plaintiff of their claim against the town was in writing, and fair and absolute on its face, still the defendant might impeach it by showing that it was merely colorable and not real, but assigned for collection only; and the defendant went into the question of the *bona fides* of the assignment. The assignors were interrogated very fully as to the consideration and circumstances of the assignment. And, as it appears to us, it is idle to claim that there was not testimony to go to the jury upon the question whether the assignors had not made a complete and full transfer of their interest to the plaintiff, and that he was entitled to the full proceeds of the claim when collected. If there was sufficient evidence to go to the jury upon that question, then it is very manifest the court properly refused to dismiss the complaint on the ground that the plaintiff was not the sole party in interest. And it may be added in this connection, that the court instructed the jury, in reference to this point, to the effect that while the assignment was absolute in its terms, and

Vol. XXVIII.—40

fair upon its face, and was sufficient in law to convey the entire interest of the assignors in the claims against the town, still, if these claims were assigned to the plaintiff merely for the purpose of collection, with the understanding that the plaintiff was to collect them and account to the original owners for the, proceeds, then the plaintiff was not the real party in interest, and had no right to sue and recover on them in his own name. This was submitting the question upon the evidence to the jury, whether the plaintiff was the real owner of those claims, entitled to sue in his own name upon them, and to receive and control the proceeds when collected. And we think this was all the defendant could require under the circumstances.

This remark, too, will dispose of the objections taken to the refusal of the court to give the third and fourth special instructions asked on the part of the defendant. For the jury were told that the plaintiff could not recover unless, upon the collection of the claims, the proceeds would belong to him and could be appropriated to his own use.

At the request of the defendant the court also instructed the jury, that before they could find for the plaintiff, they must be satisfied that at the time the plaintiff, Gates, Jacobson and Parrish enlisted and were mustered into the military service of the United States, and became credited to the town of Sugar Creek, they had knowledge that said town had offered a bounty, and that they enlisted, were mustered in and became credited to said town upon its quota with an intent or with a view to obtain such bounty ; that the bounty, at least, must have been one of the objects for such enlistment and credit to the town.

The court refused to give the second instruction asked on the part of the defendant. It is admitted in the brief of the counsel for the defendant, that this request is clumsily drawn ; and it is so. The meaning is not very clearly expressed, whatever it may be. If we understand the instruction correctly, it was, a direction to the jury that a volunteer who had enlisted and become credited to a town in consideration of a bounty offered

by the town, must give notice to the town authorities that he had so enlisted and become credited on its quota, and that he must also accompany such notice with evidence sufficient to warrant the officers in paying him the bounty. But it was not possible for the volunteer to always accompany his notice with legal proof of the fact of his enlistment. If that proof was furnished before the officers paid the bounty, the town was amply protected. But the court did give the following instructions at the request of the plaintiff, which, we think, contain the law applicable to the facts disclosed by the evidence:

" In case any person or persons did so enlist, become mustered into the service of the United States, and accredited to the town of Sugar Creek, and did give notice thereof to the proper town officer or officers, with knowledge of and with the intention of obtaining the offered bounty of $200, such persons would become entitled to said bounty in the order of time in which they severally gave such credits to the town and gave notice thereof to the town officers; unless the town had already filled its quota of twelve men by securing such men to be enlisted, mustered into service and credited to the town."

" It was not necessary that the plaintiff, or others who had procured themselves to be credited to the town of Sugar Creek as before stated, should give the said notice to the town officers in writing or in any particular form of words, but simply that they should inform the town officers, either by words or in writing, of the fact of the enlistment and credit to the town, and that they claimed the offered bounty. After such notice was given, the town officers were bound to inquire as to the facts, and the town became liable to pay the offered bounty, if the facts were true as stated."

The general charge of the court upon the question of assignment of the claims to the plaintiff, is fully sustained by the case of *Cummings v. Morris*, 25 N. Y., 625, and we think was substantially correct.

This disposes of all the exceptions relied on for a reversal of the judgment.

*By the Court.*— The judgment of the circuit court is affirmed.

LYON, J., took no part in the decision of this cause, the plaintiff having been a member of his regiment when the cause of action arose, and it appearing probable that plaintiff, and others similarly situated, consulted with him as to their right to a town bounty.