## FAY vs. RANKIN and others.

### *Evidence.*

1. Where the question was, whether certain grain, etc., seized on executions against one H., was his property or that of the plaintiff, and it appeared that it was raised on land previously conveyed by H. to plaintiff, the court instructed the jury that plaintiff was entitled to the possession of the land, and that the only question for them was, whether he raised the grain for his own exclusive use, or for the use of H., and that if he raised it for H.'s use, it was subject to seizure on the executions against H. *Held*, that evidence was inadmissible on defendant's part to show that H., conversing with the witnesses *in the absence of plaintiff*, after the conveyance of the land to the latter, claimed to have an interest in the farm or its products; the questions of conspiracy and fraudulent intent not being involved in the issue as submitted to the jury, and the rule that the declarations of one *conspirator* are admissible against the others, though made in their absence, being therefore inapplicable.

2. *Quære* whether H.'s declarations would have been admissible even if the question of fraudulent intent had been at issue.

3. Whether the court erred in charging that plaintiff had a right to the possession of the land as against H.'s creditors, is a question not raised by plaintiff's appeal.

APPEAL from the Circuit Court for *Jefferson* County.

Trespass, for breaking and entering the close of the plaintiff, and taking therefrom a large quantity of wheat, oats and hay. The answers of the defendants allege that the property was taken by virtue of certain executions duly issued on judgments recovered by some of the defendants against one Hammond, who, it is alleged, was the owner of the property.

It appeared on the trial that Hammond had previously owned the farm on which the grain and hay in controversy were grown; that he was insolvent; and that in the fall of 1874 he sold and conveyed the farm, and certain personal property thereon, to the plaintiff. The property seized was grown on the farm in 1875. The judgments and executions against Hammond, and the seizure of the property by virtue of the executions, as alleged in the answers, were duly proved.

A sufficient statement of the evidence, and the rulings of the court on the trial, will be found in the opinion.

There was a verdict and judgment for the defendants; and plaintiff appealed from the judgment.

*Edward S. Bragg,* for appellant, argued that, in view of the instructions given by the court defining the issue to be tried, the evidence of admissions, acts and declarations of Hammond, in the absence of the plaintiff and after the sale and transfer to him, was inadmissible. The declarations of a grantor are not admissible to impeach the title conveyed by him, as against his grantee. 1 C. & H.'s Notes (2d ed.), 655 et seq; Note 481. It is indifferent whether the cause was tried upon a real or false issue. Such issue as the court framed, each party had to abide; and the testimony must be considered, both as to admissibility and effect, in reference to the trial as it was had. Counsel also argued other exceptions taken to the rulings of the circuit court.

For the respondents, there were briefs by *Coleman & Spence,* and oral argument by *Mr. Spence:*

Defendants claimed that the whole transaction between plaintiff and Hammond was a continuous scheme, from the execution of the deed of the land down to the bringing of this action, to cheat Hammond's creditors; that Hammond never parted with the possession or relinquished dominion; and that plaintiff never had any possession except colorably and collusively with him. The declarations of Hammond were therefore admissible, not only to show his own motive, but against plaintiff, because of the conspiracy between them, and because of the dominion he continued to exercise over the property. The general rule that the declarations of a grantor after the execution of the grant cannot be used to impeach it, has been so far modified that when the *bona fides* of the transfer is attacked by creditors under the statute of frauds, and some evidence has been given to show a common purpose of this character by the parties, such declarations are admissible; for

whenever evidence is given to show combination or conspiracy, it lets in all the declarations of the parties against each other. *Hartman v. Diller*, 62 Pa. St., 43. Where testimony has been given on the trial tending to show that parties had combined together in making a conveyance for the purpose of defrauding the creditors of one of them, the declarations of that one disclosing the fraudulent design are admissible to be considered by the jury on the question of fraud. *McKee v. Gilchrist*, 3 Watts, 232; *Kelsey v. Murphy*, 2 Casey, 85. The declarations of Hammond, then, were evidence against the plaintiff, though made in his absence, if the two were engaged at the time in the furtherance of a common design to defraud Hammond's creditors. *Lincoln v. Claflin*, 7 Wall., 132. The common design in this case was to cultivate, harvest and sell those crops as plaintiff's, though in fact Hammond's, in order to give Hammond the benefit of them and keep them from his creditors. Very slight evidence of concert or collusion is sufficient. *McDowell v. Rissel*, 37 Pa. St., 164. It is the province of the court to determine when the common design has been sufficiently shown to admit the acts and declarations of the parties against each other; and the matter must be left largely in its discretion. 1 Greenl. Ev., § 111; *Waterbury v. Sturtevant*, 18 Wend., 353; *Cuyler v. McCartney*, 33 Barb., 165; *Orr v. Gilmore*, 7 Lans., 345; *Dewey v. Moyer*, 72 N. Y., 70; *Burke v. Miller*, 7 Cush., 549; *Peer v. Duff*, 63 Pa. St., 59.

The jury found that Hammond was in the possession of the property in controversy at the time it was levied on; and therefore his declarations were competent. *Grant v. Lewis*, 14 Wis., 489; *Selsby v. Pedlon*, 19 id., 17.

LYON, J. The learned circuit judge instructed the jury, in substance, that in law the conveyance executed by Hammond to the plaintiff vested in the latter the right to the possession of the farm conveyed, as against Hammond and his creditors,

and the right to cultivate the farm as he saw fit, and to take from it for his own use the crops he might raise thereon; that, if the plaintiff took exclusive possession of the farm, and raised the crops in controversy for his own exclusive use and benefit, such crops were not liable to seizure on executions against Hammond; but that, if there was an understanding between the plaintiff and Hammond that the former should occupy for the benefit of the latter, and that the crops raised on the farm should be raised for the use and benefit of Hammond, the crops belonged to Hammond and were subject to seizure on execution against him.

After the jury had retired to consider their verdict, they returned into court for further instructions; whereupon the learned judge restated the issue in the following language:

"I have instructed you that you have nothing whatever to do with the title of that land. I have instructed you distinctly that under and by virtue of this deed *Mr. Fay* had the right to the possession of this land, so that the right to possession is not a question with which you have anything to do. You are to assume that he had the right to the possession. He had a deed of conveyance of the land from Hammond, the man who held the fee; under and by virtue of that deed, *Fay* had the right to possession. The question I submitted to you was, whether or not he, in his own right, for himself and at his own expense, went on and cultivated this crop upon the land during the season of 1875; or whether there was some arrangement between him and Hammond, by which the possession in fact was to be Hammond's all the while, and the crop that might be raised upon it was to be the property of Hammond. But the question as respects the legal title, I have instructed you, was not drawn in controversy here. It is simply the question of possession." Upon this issue the cause was tried and determined.

After the plaintiff had introduced evidence tending to prove that he was in the exclusive possession of the farm, and raised.

the crops in controversy thereon for his own exclusive use and benefit, the defendants were allowed to show, by one Nichols, who had been employed by the plaintiff to work on the farm, that in the spring of 1875 Hammond told the witness not to borrow tools of a certain neighbor, but that if anything was wanted on the farm, he (Hammond) would go to Milwaukee and get it. Also, that Hammond came by the farm where witness was plowing, and gave him directions concerning the use of the team, saying that he had an interest in the team. The plaintiff was not present at either of these conversations. The admission of this evidence is assigned as error. The learned counsel for the defendants argued that the evidence was admissible on the principle that the declarations of a conspirator are admissible against his co-conspirators, although made in their absence; or, at least, that they were admissible to show the fraudulent intention of Hammond. This argument assumes that the questions of conspiracy and fraudulent intention are involved in the issue, as submitted to the jury; but we think they are not. Under the instructions given to the jury, if the farm was in the exclusive possession of the plaintiff, and was carried on, and the crops in controversy grown, for his sole use and benefit, he was entitled to recover; and it is quite immaterial whether it was or not so possessed and carried on for the purpose and with the intention on his part to defraud the creditors of Hammond. On the other hand, if the farm was carried on and the crops grown for the use and benefit of Hammond, in whole or in part, under the instructions, such crops were subject to seizure on execution against Hammond, even though the transactions between him and the plaintiff were entirely honest, and neither of them intended to delay or defraud the creditors of Hammond. Hence we are unable to hold the evidence admissible on the grounds urged by counsel.

Were this a contest for the crops between the plaintiff and Hammond, it is clear that the latter would not be allowed to

prove his own statements or declarations, made in the absence of the plaintiff, to sustain his claim to the property. The defendants claim through Hammond. Their right to hold the property seized depends upon Hammond's ownership of it. Whether he is the owner is the precise issue which has been tried — not whether he has made a fraudulent disposition of the property.

We are unable to perceive why a different rule of evidence should be applied here than would be applied were Hammond, instead of his creditors, a party to the action claiming the property. Moreover, were the question of fraudulent intent involved in the issue, we should hesitate to hold that the declarations of Hammond that he had an interest in the property, made in the absence of the plaintiff, and while the latter was ostensibly in possession of and carrying on the farm, and which were no part of the *res gestæ*, are admissible to prove the fraudulent intention of Hammond. It would seem that to admit such evidence would be to enable any grantor or vendor to endanger the title of his grantee or vendee, at any time, by loose declarations or statements not made under the sanctions of an oath, which cannot be subjected to the scrutiny of a cross-examination, and which may have been maliciously made for the express purpose of defeating the title which he had conveyed.

We conclude that the testimony of the statements of Hammond to Nichols was improperly admitted.

It is evident that this testimony may have had influence with the jury in determining (as they did) that the crops in controversy were raised for the use and benefit of Hammond. The probability that it had such influence is strengthened by the fact that, when the jury returned into court for further instructions, the testimony of Nichols was read to them at their request, after which they agreed on a verdict for the defendants. The error in admitting the testimony is therefore fatal to the judgment.

Whether the court erred in holding that the conveyance by Hammond to the plaintiff vested in the latter the right to the possession of the farm, as against the creditors of Hammond, is a question not presented by this appeal, and we do not determine it.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.