CHASE, Respondent, vs. WOODRUFF, Appellant.

*November 11—November 26, 1907.*

*Descent and distribution: Husband and wife: Succession: Intestacy: Presumptions: Evidence: Ejectment: Possession of deeds: Presumptive evidence of delivery: Self-serving declarations: Appeal and error: Conclusiveness of findings: Evidence necessary to rebut delivery of deed in possession of grantee.*

1. Uncontroverted evidence that a husband was the sole heir of his deceased wife proves his succession to whatever title she had to lands standing in her name.

2. The primary right of succession is by the law of inheritance, and hence, where uncontroverted evidence showed that plaintiff was the sole heir of his deceased wife, he is entitled to rest on the legal presumption of intestacy until rebutted by evidence.

3. In such case the husband is not called upon to show negatively that the wife did not die testate.

4. In an action of ejectment in which plaintiff claimed title as heir of his deceased wife, possession of a deed of the premises in question by the wife at the time of her death, in the absence of any other evidence, raises a presumption that it was delivered to her to take effect according to its import at the time of its execution; and the fact, if it be a fact, that the instrument was not delivered until some years after its date raises a presumption that it was intended to take effect when so delivered.

5. Declarations of a grantor in a deed, that he delivered it to the grantee for safe-keeping, made after the deed had passed into the possession of the grantee, are self-serving and not admissible to defeat the deed.

6. The ordinary rule that the conclusion of the trial court as to facts should not be overruled unless it be clearly wrong does not apply where the court's conclusion was reached by applying a wrong rule of law.

7. In an action of ejectment plaintiff claimed title as heir of his deceased wife, her title resting upon a deed from her father which had been in her possession for many years prior to her death. Although there was evidence of circumstances tending to impeach a conclusion of delivery, there was no fraud alleged, and the only question was whether the deed had been delivered to take effect according to its tenor. *Held*, that the evidence necessary to rebut the *prima facie* effect of such possession must be clear and satisfactory, but that evidence short of establishing absolute nondelivery beyond all reasonable controversy was sufficient to raise a jury question.

8. In such case, upon the evidence, stated in the opinion, it was *held* that the issues involved should have been submitted to the jury.

APPEAL from a judgment of the circuit court for Sauk county: E. RAY STEVENS, Circuit Judge. *Reversed.*

Action in ejectment, the complaint being in the usual form. The answer put in issue plaintiff's claim of title and pleaded title and right of possession in the defendants.

Both parties claimed title under the same grantor. The evidence was to this effect: March 4, 1868, Julius R. Woodruff made a deed in due form and naming $1,000 as the consideration, purporting to convey lots 3 and 4, block 25, of the village of Baraboo, Sauk county, Wisconsin, to his daughter Jennie, a child by his second wife then about twelve years old, and 120 acres of land to his sons by his first wife, *Frank R.* and Charles T., who were then of age or nearly so. It contained this language: "The intention is to give my sons equally, the above described farming lands, and to Sarah Jennie the house and lots in the village of Baraboo." The lot in question was vacant and so continued till *Frank* took possession thereof in 1905. The deed was in possession of Jennie for many years prior to her death, which occurred April 2, 1902. She left plaintiff, her husband, as her only heir at law, who obtained the deed as part of her effects and placed it on record March 8, 1906. When it was made the grantor was a widower, but he married for the third time a

few days thereafter. The third wife was living when this action was commenced. He died about two months before the deed was recorded. On April 19, 1905, he made a second deed of the property in question to *Frank,* who knew the first deed was outstanding. His deed was recorded May 5, 1905. Immediately after *Frank* got the deed he took possession of the lot, built a dwelling house thereon, and occupied the same. He enjoyed the use of the premises continuously for over a year. After Jennie died *Frank* inquired of plaintiff as to the whereabouts of the first deed, and was told by the latter that he did not know where it was. Thereafter *Frank* and his father kept track of whether the old deed made its appearance of record.

There was no evidence that the father left a will or that the property in question consisted of a homestead or a part of one, nor direct evidence as to when the first deed was delivered to Jennie. *Frank* testified, under objection, that he saw it in his father's possession about 1874. He was called as a witness for plaintiff and allowed to testify that his father told him the deed was delivered to Jennie. Under objection, on cross-examination, he was allowed to testify to a declaration by the father, made at the time of the conversation testified to in chief, that the deed was given to Jennie for safe-keeping, because he did not wish to have it lie around the house. That evidence in deciding the case finally was held incompetent. Plaintiff did not endeavor to obtain possession of the lot or make any claim thereto till after *Frank* made his improvements. There was no evidence showing that Jennie made any claim to the property during her lifetime, or that she or her husband ever paid any taxes thereon, and no evidence as to whether the deed was relied on by *Frank* and his brother for title to the farm lands, nor any evidence that the deed was ever recognized by any one as affecting the title to any of the property described therein till it was placed on record as aforesaid. There was evidence

undisputed that the use of the property as improved was worth from $15 to $16 per month, and unimproved worth, possibly, $20 per year.

At the close of the evidence both sides moved for a directed verdict. The defendant's motion was denied. The plaintiff's motion was granted upon the ground that there was no evidence to efficiently rebut the *prima facie* effect of possession of the deed by plaintiff's wife for many years prior to her death, and that such *prima facie* effect could only be efficiently rebutted by evidence establishing nondelivery of the instrument for the purpose of having it take effect, beyond any reasonable controversy. Judgment was rendered accordingly, the court fixing the damages for the unlawful withholding of the property at $28.

For the appellant there was a brief by *Dithmar & Carow* and *Grotophorst, Evans & Thomas,* and oral argument by *E. A. Evans.*

For the respondent there was a brief by *H. E. Fitch,* attorney, and *Goggins & Brazeau,* of counsel, and oral argument by *T. W. Brazeau.*

MARSHALL, J.    Respondent established title to the property in himself, if the deed to his wife was delivered to her as a conveyance according to its import. The uncontroverted evidence that he was her sole heir at law proved his succession to whatever title she had. He was not called upon to show negatively that she did not die testate. As the primary right of succession is by the law of inheritance, plaintiff was entitled to rest on the legal presumption of intestacy until that was rebutted by evidence. *McClanahan v. Williams,* 136 Ind. 30, 35 N. E. 897.

It is conceded that if the deed was not delivered till after the grantor married and the property in question was a homestead, or part of one, the instrument was void, but there was no evidence that such was the character of the property.

It is conceded, as the fact is, that possession of the deed by respondent's wife at the time of her death, in the absence of any other evidence raises a presumption that it was delivered to her to take effect according to its import at the time of its execution, and that the fact, if it be a fact, that the instrument was not delivered till some years after its date raises a presumption that it was intended to take effect when so delivered. So the cause turns on whether the *prima facie* proof of title made by the circumstance that the deed was in fact in possession of respondent's wife, at least many years prior to her death, was rebutted so as to raise a jury question respecting the character of such possession.

The court in deciding the motion to direct a verdict rightly rejected the evidence as to what Julius R. Woodruff said to *Frank* about having delivered the deed to Jennie for safe-keeping. That declaration, if made, was of a self-serving character and so was clearly not provable to defeat the deed which years before had passed into Jennie's possession. The rule on that subject is elementary. *Welch v. Sugar Creek,* 28 Wis. 618; *Jilsun v. Stebbins,* 41 Wis. 235; *Fay v. Rankin,* 47 Wis. 400, 2 N. W. 562.

With the evidence above referred to out of the record there is only left circumstantial proof impeaching the *prima facie* case made by the undisputed fact of Jennie's possession of the deed. Whether such proof was sufficient to raise a jury question must be decided as an original proposition. The ordinary rule that the conclusion of the trial court should not be overruled unless it appears to have been clearly wrong on the question of fact does not apply because the court's conclusion was reached by applying a wrong rule of law.

As indicated by the statement, the court held that the *prima facie* case referred to should prevail unless the contrary was established beyond all reasonable controversy. *Kercheval v. Doty,* 31 Wis. 476, 491, was relied on by the learned court. Counsel for respondent, now relying thereon,

add to the trial court's citation, *Baumann v. Lupinski,* 108 Wis. 451, 84 N. W. 836, and *Linde v. Gudden,* 109 Wis. 326, 85 N. W. 323. They are all cases where it was sought to defeat a deed upon the ground of fraud, and have no application, as it seems, to a case of this sort where no fraud is claimed and the only question is whether a deed found in possession of a grantee therein named, which was unquestionably placed in her possession, was delivered to take effect according to its tenor. Doubtless the evidence to efficiently rebut the *prima facie* effect of such possession should be pretty clear and satisfactory, but it need only be sufficient to so far impair the effect of such possession that it cannot stand as a matter of law as establishing with reasonable certainty full delivery of the instrument. Something quite short of establishing absolute nondelivery beyond all reasonable controversy is sufficient to raise a jury question.

As indicated in the statement, there are these circumstances throwing some doubt upon whether the deed was delivered to Jennie so as to place the same beyond the control of the grantor and with the purpose of vesting the title to the property therein described in the grantees. No claim was made under the deed by respondent's wife during her lifetime, covering a period subsequent to the making of the deed of thirty-four years. It is, at least, quite doubtful whether she had possession of the instrument till some twenty years after it was made. It was made when she was a child, and the indications are that the property was treated by the grantor up to the time of his death regardless of its existence. His failure to recall the instrument, if it were subject to recall, after his daughter died, is explained by the circumstance that respondent disclaimed having any knowledge of the whereabouts thereof. The father's conduct in treating the property as he did, and, after waiting some three years subsequent to his daughter's death for the production of the old deed with an assertion of title thereunder, conveying the

land to *Frank,* and respondent's failure to produce the paper and denial of knowledge of its whereabouts till after *Frank* had taken possession of the property and improved the same, are significant. All of these circumstances and others that might be mentioned are not entirely consistent with the theory that the deed was delivered to Jennie to take effect according to its import; that the father absolutely parted with control of it. We are constrained to hold that the question involved under proper instructions should have been submitted to the jury, and that the learned court below would so have held had the wrong rule of law before mentioned not been applied to the case.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.