Stringer *v.* The Northwestern Mutual Life Insurance Company.

No. 8638.

STRINGER *v.* THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY.

SUPREME COURT.—*Practice.—Evidence.*—Where the proof of a fact is clear and convincing, and yet the trial court has found the contrary without any evidence fairly tending that way, the finding, though against the party who had the burden of proof, will be set aside by the Supreme Court, especially when the witnesses were numerous, their testimony harmonious, and no attempt was made to impeach them, or to refute their statements by opposing evidence.

MARRIED WOMAN.—*Infant.—Disaffirmance of Deed Executed During Coverture and Minority.—Action to Quiet Title.—Complaint.—Estoppel.*—It is a question of fact whether the disaffirmance of a deed made by an infant *feme covert* was unreasonably delayed after she had reached her majority; and in an action by her to recover real estate so conveyed, a cross complaint by the defendant, to quiet the title thereto on account of such delay, should, besides alleging the lapse of time and circumstances, aver that the delay had been unreasonable.

*Quære.*—Whether an infant *feme covert*, who has conveyed her real estate, must disaffirm on arriving at full age, or may she do so within a reasonable time after becoming discovert? and can she while under coverture be bound by an estoppel *in pais* against disaffirming her deed made when she was an infant and under coverture? *Scranton* v. *Stewart*, 52 Ind. 68, and *Miles* v. *Lingerman*, 24 Ind. 385, criticised.

ESTOPPEL IN PAIS.—As a rule there can not be an estoppel *in pais* unless there has been a change in the position of the parties in respect to the matter in dispute, to the detriment of the one who pleads the estoppel.

From the Hendricks Circuit Court.

*E. G. Hogate, R. B. Blake* and *M. Sowder,* for appellant.

*C. Baker, O. B. Hord, A. W. Hendricks, C. Foley, A. Baker* and *E. Daniels,* for appellee.

WOODS, J.—The appellant brought the action to recover of the appellee the possession of the undivided one-fourth of certain lands described in the complaint. The appellee answered by the general denial and filed a cross complaint, claiming title under a deed executed by the appellant when she was an infant *feme covert,* and alleging certain facts under which it was and is claimed that the appellant was estopped to disaffirm her deed.

Stringer *v.* The Northwestern Mutual Life Insurance Company.

The appellant demurred to the cross complaint, and has assigned error upon the overruling of that demurrer, and upon the overruling of her motion for a new trial.

The court upon request of the appellant found the facts specially, finding, among other things, that the appellant was not an infant, but was twenty-one years of age when she joined her husband in a conveyance of the land to one Josiah D. Wynn, who mortgaged the same to the appellee, and that by a foreclosure of that mortgage the appellee had become the owner of Wynn's title.

If this finding in reference to the age of the appellant when she joined in that conveyance can stand, the other questions in the case are immaterial. We are of opinion, however, that the finding in this respect is not supported by and is clearly contrary to the evidence.

The deed in question was made January 26th, 1866.

Lucinda Francis testified that her first husband, the plaintiff's father, died August 17th, 1849, the plaintiff being at the time "eight months and a few days old;" that she was present at the making of the deed, and before it was made told Mr. Wynn that none of the children were of age; that she contracted for tombstone for her husband four weeks after his death; the date on the tombstone is correct. Mrs. Nancy Stewart, an aunt of the plaintiff, testified that when William Stewart died the plaintiff was about eight months old. Levi Pennington testified that the plaintiff was an infant, he thought not more than eight or nine months old, when her father died in August, 1849; that he "looked at the tombstone this morning and the inscription there says that he died August 17th, 1849." The plaintiff testified that she did not know of her age except what she had heard; that her husband, brother and mother were present when the deed was made. Lorenzo D. Stringer, husband of the plaintiff, testified: "I told Wynn that I did not think she could make a good deed; I told him this when she signed the deed; my wife was fourteen years old January 2d, 1862, and was married October 1st, 1862."

William P. Stewart testified: "I am brother of plaintiff; I heard mother say to Wynn the day the deed was made, that none of us were of age; my sister, the plaintiff, is younger than I am; seventeen months younger."

On cross-examination, Mrs. Francis, the plaintiff's mother, identified the family record, which the parties agreed showed that John W. Stewart was born February 14th, 1845, William P., May 19th, 1846, and the plaintiff, January 2d, 1847, and on cross-examination, Mrs. Francis testified: "The family record was sent for by Mr. Foley, one of the attorneys for the defendant in this case. The record was made by L. D. Stringer five or six years ago with the assistance of my present husband; I procured the following letter to be written to Mr. Foley, which accompanied the record when I sent it to him, to wit:

"'Wednesday, 28th, '79. Mr. Foley: The ages of these two heirs are as follows: Wm. P. Stewart was born May 19th, 1846; Mary E. Stewart was born January 2d, 1847. The above is a correct statement of these heirs' ages, took from the family record. Please answer immediately.

"'LUCINDA FRANCIS.'"

Josiah D. Wynn, called by the defendant, testified: "At the time the deed was made, there was a complaint that William P. Stewart was not of age, and after the deed was made, and before it was recorded, he and I went to Mr. Foley for counsel about it; he told us to wait until William should be twenty-one years of age, and for him then to acknowledge it a second time; and, accordingly, May 21st, 1866, William and his wife acknowledged the deed a second time before the same officer, as it was before, and it was afterwards recorded; * * four or five years ago, after I went into bankruptcy, Stringer, the husband of the plaintiff, told me that if the land had remained in my hands, he would not have brought suit to claim the land, and this was the first time that I ever heard that Mrs. Stringer claimed to have been under twenty-one years of age at the time she executed the deed to me with the others."

The defendants also introduced in evidence the sworn application of Mrs. Stewart (Francis), for the appointment of a guardian of her children, dated March, 1856, wherein she represented them to be aged respectively as follows: John W., twelve years, William P., ten years, and Mary E., the plaintiff, eight years; also the reports of S. T. Hadley, the guardian of said minors, including the final report, dated January 30th, 1866, in which is found the statement following, to wit: "And the said wards having arrived at lawful age, now pays to said guardian the balance above mentioned, and said guardian asks to be discharged," etc.

While there are some discrepancies in the evidence, especially between the statements of some of the witnesses and the so-called family record, there is nothing to obscure, or to cast any reasonable doubt on the proposition that the plaintiff was a minor when she made the deed which she seeks to set aside. The family record is inconsistent with the known and usual course of nature, and is evidently not to be relied on, if, indeed, it was admissible for any other than impeaching purposes against those who aided in making it. If it constituted evidence of the plaintiff's age, it showed her to be a minor at the date of the deed, though more nearly of age than the testimony of the witnesses showed her to be.

Excepting the final report of the guardian, made four days after the execution of the deed, there is no evidence which, it is claimed, even tends to show that the plaintiff was of age when she made the deed, and that evidence, as we think, is easily harmonized with that which satisfactorily establishes the opposite conclusion.

The marriage of a female ward to a person of full age operates as a discharge of the guardianship; that the plaintiff had been married as much as four years there is no conflict in the evidence, and so it was not requisite that she should be twenty-one years old before her guardian could be discharged. The statement in the report, therefore, that his wards were of lawful age on the 30th, was not proof that

they were of age four days earlier, and, in the light of the other evidence, can not be said to tend to prove that the plaintiff was twenty-one years old at that time. Certainly, it ought not to weigh down or even to impair the force of the contrary evidence, which is clear and satisfactory.

It can not be doubted that the plaintiff's father died in August, 1849. The undisputed inscription on his tombstone, made very soon after his death, puts that beyond reasonable cavil; and the sworn statement of the mother, in 1856, when there was no possible motive for misrepresentation, that the plaintiff was eight years old, leaves no room for questioning the accuracy and truthfulness of the testimony, that she was but eight or nine months old when her father died. But if this left room for hesitation, there remains the fact that her next older brother was conceded to be under age at the time the deed was made, and, in order to confirm his act, made a subsequent acknowledgment of his execution of the conveyance.

It is true that the plaintiff had the burden of proof to show her infancy when the deed was made, and it was the province of the court to weigh the evidence and determine the credibility of the witnesses; and it is the well settled rule of this court not to disturb the finding of the court or jury upon a question of fact concerning which the evidence was conflicting, and where there was evidence fairly tending to support the verdict.

The fact remains, however, that human testimony is the ultimate means of proof on which verdicts must rest. Without it circumstantial evidence can not be adduced, and, if disputed, the genuineness and authenticity of documentary proof must be established by it.

When, therefore, there is clear and convincing proof of a fact, and yet the court has found the contrary, without any evidence fairly tending that way, though against the party having the burden of proof, the finding ought not to stand, especially when, as in this case, the witnesses were numerous, their testimony in all essential respects harmonious, and no

attempt made to impeach their character, or to refute their statements by opposing evidence.

The substance of the cross complaint is, that on and prior to the 26th day of January, 1866, the plaintiff, being an infant under twenty-one years of age, and being the owner of the undivided one-fourth of the lands described in the complaint, joined her husband in a conveyance of the same to Josiah D. Wynn, which deed was duly recorded and for which she received of said Wynn an adequate consideration; that her only claim to said land is based on the fact that she was an infant at the time she executed and acknowledged said deed, and that on the 10th day of April, 1879, before commencing this suit, she notified the defendant in writing of her disaffirmance of said deed; that she attained the age of twenty-one years on the 2d day of January, 1868, more than eleven years prior to the service on the defendant of notice of said disaffirmance; that immediately after the execution of said deed to him, said Wynn entered into the actual, exclusive and visible public and adverse possession of the land as owner under said deed and so continued until his title was transferred to and vested in the defendant, and, while so in possession, had the same enclosed and cultivated it as part of his farm, and made lasting and valuable improvements thereon of the value of ———————— dollars, the plaintiff and her husband residing the meantime not more than five miles distant, and knowing of Wynn's possessing, cultivating and paying the taxes on said land and claiming to be the owner thereof; that on the 27th day of July, 1872, Wynn executed to the defendant a mortgage on said land with other lands, to secure the repayment of $3,000 loaned him by the defendant; the defendant relying upon the recorded title, and the validity of the said deed, without notice or suspicion of any infirmity therein; that it caused said mortgage to be duly recorded on the 12th day of August, 1872, and afterwards by due foreclosure and sale under the decree, to wit, on the 12th day of February, 1878, the defendant became the owner of said land; that the

plaintiff and her husband well knew that Wynn had mortgaged the land to the insurance company, and that the company was proceeding to foreclose said mortgage, but gave no notice of her minority at the time the deed was made, nor of her intention to disaffirm, until after the sale and conveyance under the decree to the defendant, but during all said time studiously concealed by silence from the defendant the fact of her minority; that after the execution of said mortgage, Wynn on his own petition was adjudged a bankrupt, and by decree of the court was discharged in bankruptcy before said foreclosure, of which the plaintiff and husband had notice and of the reliance of the insurance company on said mortgage security, and that by reason thereof it failed to prove the debt against the bankrupt's estate. Wherefore the said insurance company claims:

*First.* That it is a *bona fide* purchaser without notice of the plaintiff's minority.

*Second.* That her right to disaffirmance was lost by lapse of time.

*Third.* That under the facts alleged she is estopped to disaffirm.

We are of opinion that the court erred in overruling the demurrer for want of facts to this pleading.

Even if it be conceded that a married woman may be bound by an estoppel *in pais* against disaffirming her deed made while an infant *feme covert*, upon which point *Behler* v. *Weyburn*, 59 Ind. 143, and the cases following it, may be considered, no estoppel is shown in this instance, unless it shall be deemed to consist mainly in the mere lapse of time, and it is not alleged that the delay had been unreasonable. *Wiley* v. *Wilson*, 77 Ind. 596. Nothing else among the matters alleged can be regarded as of great significance.

The improvements alleged to have been made by Wynn are not described, nor shown to have been of any value, and the presumption may well be indulged that the products of the land afforded ample compensation for his outlay in taxes, im-

Stringer *v.* The Northwestern Mutual Life Insurance Company.

provements, and in cultivation ; and as to the insurance company, it is not pretended that anything was done to prevent, or turn aside, enquiry into the capacity of the appellant to join in the deed, on the faith of which the company claims to have acted, an enquiry which every purchaser, grantee or mortgagee is bound to make at his peril, and for a failure to make such enquiry, the registry laws afford no excuse or protection. See *McClain* v. *Davis,* 77 Ind. 419. Besides, it is not alleged that the appellant had any knowledge of the loan by the company to Wynn until after it was made, nor that the other lands covered by the mortgage did not make the security good, and it is not shown that the company lost anything by failing to prove its claim against Wynn's bankrupt estate, which, so far as appears, was worthless. The mortgage under which the appellee obtained title, was made in July, 1872, six and one-half years after the date of the deed in which the appellant joined, and nothing is averred to show that the failure of the appellant from that time to disaffirm her deed did work, or could have worked, to the injury of the appellee. There is no reason in principle for saying that the right to disaffirm a deed on account of infancy shall be cut off by lapse of time short of the period prescribed in the statute of limitations, for bringing an action to recover the property, unless it be on the principles of estoppel, and it must be an exception to the ordinary rule if there can be an estoppel where there has been no change in the position of the parties in respect to the matter in dispute, detrimental to the one who pleads the estoppel. If, then, this reasoning be correct, the estoppel must be found, not in the lapse of time from 1866 to 1879, when the disaffirmance was declared, but from 1866 to 1872, when the mortgage was made, as after that time nothing is shown to have occurred to the further detriment of the appellee. To say the least, according to the rule declared in *Wiley* v. *Wilson, supra,* it should have been alleged that the disaffirmance had been unreasonably delayed, so that the question of fact could have been left to the jury.

For the proposition that an infant *feme covert* must disaffirm her deed within a reasonable time after arriving at majority, though yet under *coverture*, counsel seem to rely mainly upon *Scranton* v. *Stewart*, 52 Ind. 68 and *Miles* v. *Lingerman*, 24 Ind. 385. Those cases came recently under a careful and critical examination by the Supreme Court of the United States, in the case of *Sims* v. *Everhardt*, 102 U. S. 300, wherein it was held, in reference to a conveyance in this State in 1847, that a disaffirmance was good, if made within a reasonable time after the ceasing of the coverture. Some stress is laid, in the opinion, upon the fact that the case of *Scranton* v. *Stewart* arose upon a deed made after the laws of 1852 had taken effect, whereby the married woman was empowered to bring suits concerning her lands, independently of the husband; but, as under those laws she was still entitled to the benefit of the disability of coverture and was not bound to sue, it would seem that no additional duty should be, on that account, imposed on her in reference to the act of disaffirmance, which must, in such case, precede the bringing of the suit.    If the express giving of power to sue does not, in respect to the statute of limitations, impose the duty to sue, much less, apparently, can there be inferred, from the grant of that power, a new rule in reference to the act of disaffirmance, in respect to which the laws referred to are entirely silent.    This is a point, however, which need not be decided now, and which we prefer to leave open for further consideration.    For the other reasons stated, the counter-claim is insufficient, and the demurrer to it should have been sustained.

Judgment reversed, with costs, and cause remanded, with instructions to grant a new trial and to sustain the demurrer to the counter-claim.