McClanahan *v.* Williams *et al.*

are involved, and we think the court below did not err in any of its rulings of which complaint is made.

Judgment affirmed.

Filed Nov. 27, 1893.

---

No. 16,495.

McClanahan *v.* Williams et al.

Decedent's Estate.—*Presumption.*—*In Favor of Testacy or Intestacy?* —*Election of Widow.*—The change in the rule of election—section 428, Elliott's Supp., requiring the widow to take under the will, unless she chooses, in legal manner, to take under the law—does not create a presumption against intestacy and in favor of testacy, but the presumption of intestacy still obtains.

Real Estate.—*Conveyance of Husband's Lands.*—*Joinder of Infant Wife.*—*Disaffirmance.*—*Inchoate Interest.*—*Recovery of.*—Where an infant wife joins with her husband in the conveyance of his lands, before such wife can maintain an independent action to set aside her deed made in infancy, she must disaffirm; but where the grantee gets into court first, and seeks a confirmation, it will not be too late, on that account, to disaffirm before filing her pleading to obtain her interest, if in fact she is required to disaffirm at all.

Same.—*Conveyance by Wife of Inchoate Interest.*—*Infancy.*—*Disaffirmance.*—*Statute of Limitations.*—*Right of Action, When Accrues.*—*Husband and Wife.*—Where an infant wife joins in a conveyance of land by her husband, disaffirmance, after she obtains her majority, could lend no force to her rights, as long as her interest therein remains inchoate, and the statute of limitations will not begin to run until her interest becomes absolute by the death of her husband, for an action could not be maintained to annul the deed, to quiet title, or for possession, as long as the wife's interest remains inchoate and contingent.

Pleading.—*Misnomer of.*—*Does not Affect Rights.*—The name given to a pleading does not determine its character, and the rights of litigants are not lost by a misnomer of their pleading.

From the Sullivan Circuit Court.

*J. T. Hays* and *H. J. Hays*, for appellant.

*W. C. Hultz*, for appellees.

McClanahan *v.* Williams *et al.*

HACKNEY, J.—The appellant sued to quiet his title to a tract of land in Sullivan county.

The appellee Sarah C. Williams filed what she denominated a counterclaim, in which she alleged that in 1864 she was but fifteen years of age and was the wife of Elijah W. Williams, who then owned the land in question; that in said year she and her said husband joined in a conveyance of said lands to the appellant; that thereafter, and until in 1891, she continued to be the wife of said Elijah W. Williams, who, in said last named year, departed this life; that on the 2d day of November, 1891, she disaffirmed said conveyance, and gave notice thereof to the appellant. She prayed partition, by which one-third of said lands might be set off to her and two-thirds to the appellant.

To this pleading the appellant responded in what he called an answer, in which he alleged an innocent and good faith purchase, a continuous and uninterrupted adverse possession, valuable improvements, constant occupancy and payment of taxes, all under color of title and open and notorious claim of ownership; that during the twenty-seven years of his occupancy, claim of ownership and making of improvements, and up to the commencement of this suit, the appellee Sarah, with full knowledge of all of the facts, stood by, concealed her infancy and claim of ownership, and gave no notice of disaffirmance until the commencement of this suit, and that she became twenty-one years of age more than twenty years before this suit was commenced.

The court overruled appellant's demurrer to appellee's counterclaim, and sustained the appellee's demurrer to the appellant's answer thereto.

These rulings present the questions for consideration by this court. The record discloses a default by William R., Frank, and Martha A. Williams, and an answer

by *guardian ad litem* for Clara A. Williams, a minor. The decree appears to have been rendered upon refusal of the appellant to plead further, after the sustaining of the demurrer of Sarah C. Williams to his answer. No submission or trial is shown as to the issue made upon the answer of the *guardian ad litem*, and the validity of the decree as against said Clara, and possibly as to the appellees who were defaulted, may well be doubted. As the only issue made in this court arises upon the rulings as between the appellant and Sarah C. Williams, we do not pass upon the validity of the decree in other respects.

The appellant contends that the appellee's "counterclaim" was insufficient in failing to allege the death of Elijah W. Williams intestate, and that she, as his widow, had no provision by will. This contention rests upon section 2491, R. S. 1881, and section 428, Elliott's Supp.

The first of these sections defines the interest of the surviving wife in "the real estate of which her husband may have been seized in fee simple at any time during the marriage, and in the conveyance of which she may not have joined," and it is provided "that if the husband shall have left a will, the wife may elect to take under the will instead of this  *  *" provision.

By section 428, *supra*, it is provided that where a husband dies testate the wife surviving shall take under the will unless she elects in writing to take under the law. The application of these provisions, which we understand the appellant's learned counsel to make, is, that since the adoption of section 428, *supra*, a legal presumption arises, in the absence of countervailing allegations, that the widow receives testamentary provision, and that such provision is in lieu of all interest in the lands of which the husband was owner during his marriage, and in the conveyance of which the wife did not join.

If we should accept the contention that testacy and not

McClanahan *v.* Williams *et al.*

intestacy is presumed, there would appear to be force in appellant's contention, provided it were directed to lands of which the husband died seized. Here it is directed to lands of which he did not die seized, but which he conveyed, effectually as to himself. Of such lands, we think it perfectly clear that the husband could have made no testamentary disposition.

The wife held an inchoate interest in all of the lands owned by the husband during his marriage to her. This the law gave her, and she could not be deprived of it by any act of her husband, even by the devise of all of his interest in all such lands. In the lands sold to the appellant by Elijah W. Williams, the appellee had an inchoate interest in one-third, and if her infancy left her in the attitude of not having joined in the conveyance, that interest became absolute upon the death of Elijah. Just how any possible testamentary provision by Elijah for her, in lands of which he died seized, would be deemed to defeat this result, we do not observe. She had the same character of interest in any other lands owned by him during their marriage. If he continued to own such other lands until his death, he could not defeat the consummation of that interest by any testamentary provision he could make; if he gave her one-third thereof, it would but fulfill the requirements of the law, while, if he gave it all to her, we see no reason for the rule that such provision should stand as compensation for interests held by the appellant and, under the law, belonging to her.

Treating the conveyance to the appellant as one in which the appellee did not join, he now holds lands in which, upon the death of her husband, she became the absolute owner of one-third. Of this ownership she could not be deprived by the will of her husband; this interest

could not be conferred by the husband upon the appellant by any testamentary provision; an attempt to have done so would have failed, just as the attempted conveyance of such interest by the husband alone had failed.

If a will by Elijah W. Williams could have divested the title of the appellee, and could have conferred that title upon the appellant, the case of *Fisher* v. *Payne,* 90 Ind. 183, might be an authority upon a question of pleading, but then only upon the presumption that said Elijah died testate. But, as we have said, no such testamentary power could exist.

The appellant does not dispute the proposition that ordinarily the presumptions are in favor of intestacy and and not of testacy, but it is claimed that the enactment of section 428, *supra,* created the presumption in favor of testacy.

The primary rule for the casting of estates is that prescribed by the laws of descent, and, to maintain this primary rule, the first presumption must be that of intestacy. The rule is accepted as a just and equitable method of distribution, and it is only when inequality is desired that testamentary rules need to be employed. When the same quality and quantity of estate is cast by devise that is secured by the law, the presumptions in favor of the law are so strong that it is held that the estate vests by descent and not by devise. *Denny, Exr.,* v. *Denny,* 123 Ind. 240; *Gilpin* v. *Hollingsworth,* 56 Am. Dec. 737.

In the early history of this court, it was held that even when it was shown that a will existed, but it was not shown what disposition it made of the estate of the testator, the estate would vest under the law and upon the higher presumptions in favor of the law. *Stephenson* v. *Doe on Demise,* 8 Blackf. 508.

This case has been carried into the American De-

cisions, volume 46, page 489, and is supported by the later cases of *Waugh* v. *Riley,* 68 Ind. 482; *Thomas* v. *Thomas,* 108 Ind. 576; *Denny* v. *Denny, supra; Baxter* v. *Bradbury,* 37 Am. Dec. 49; *Boisseau* v. *Aldridges,* 27 Am. Dec. 590; Lipman's Appeal, 72 Am. Dec. 692.

But for this presumption, the burden would rest upon the heir to establish the negative proposition that the ancestor had died intestate which, in many cases, would work great hardship. On the other hand, the existence of this presumption requires the affirmation of the testamentary provision before the law will surrender its provision, a rule never working hardship.

Did the Legislature intend to change this reasonable and well established rule by the enactment of section 428, *supra?* We can not believe that such was the intention. The primary object of the section was to settle that confusion which had before existed under section 2505, R. S. 1881, requiring an election by the widow, whether she accepted or declined the provisions of her late husband's will. Under that rule the widow's silence made it impossible to distribute the estate, and no loss was sustained or penalty incurred by her from her silence, nor was it provided when such election should be made. The effect of the present requirement (section 428, *supra*) is to secure a definite settlement of the choice of the widow before the time for distribution. If she remains silent, the law implies a choice for her of the provisions of the will. If, within the year of the administration, she desires to take under the law, she must so elect. We are unable to bring ourselves to the conclusion that this change in the rule of election creates a presumption against intestacy.

The "counterclaim," therefore, was not deficient in failing to allege the intestacy of Elijah W. Williams.

It is further insisted that the "counterclaim" is in-

sufficient in not alleging a disaffirmance of the deed before the appellant's suit was instituted, and several cases are cited to support this contention.    The cases cited hold that before an independent action will lie by the grantor to set aside her deed made in infancy, she must disaffirm. There is no doubt of the rule of these cases.    But where the grantee gets into court first, and seeks a confirmation of the deed, it will certainly not be too late, on that account, to disaffirm before filing her pleadings to obtain her interest.    If the rule were as appellant contends, it would invite a race in the filing of actions, and, if the grantee got into court first, the infant or insane grantor's rights would be defeated, while, if such grantor should succeed in first filing his complaint, no rights would be lost.    The rule requiring disaffirmance is said to be for· the avoidance of litigation, in that it enables the parties to correct the evils without suit and costs.    *Ashmead* v. *Reynolds*, 127 Ind. 441; *Lange* v. *Dammier*, 119 Ind. 567.

In view of the purpose of the requirement, it would seem that after litigation has been commenced to affirm the deed, it should not be necessary to disaffirm before setting up an adverse claim.    However, we need not so decide, since we find that the appellee alleges a disaffirmance before asserting her claim, by the filing of her pleadings, and this, we hold, is all that could reasonably be required if the disaffirmance be otherwise seasonably made.    The analogy of the ordinary counterclaim is urged in the argument that the claim of title asserted by the appellee·did not exist at the time of the commencement of the suit, and that a subsequently acquired claim could not be asserted.    The analogy of the set-off is more nearly in point, as counterclaim necessarily arises out of or is connected with the cause of action, and is therefore not the subject of subsequent creation or purchase.

But the appellee's right is the basis of a cross-action, and her pleading contains all of the essential elements of a cross-complaint. The name given to a pleading does not determine its character, and the rights of litigants are not lost by the misnomer of their pleadings.

Counsel for appellant make a strong argument in favor of the answer to the cross-pleading of the appellee, and urge us to depart from the cases holding that continued coverture is a valid excuse for failing to disaffirm the deed of an infant married woman.

The further argument is made that said answer was good as an estoppel.

Disregarding the provision of the present code which omits to include coverture as one of the legal disabilities (R. S. 1881, section 1285), the cases hold that disaffirmance may be made within a reasonable time after the infant grantor has attained the years of majority. *Sims* v. *Bardoner*, 86 Ind. 87; *Richardson* v. *Pate*, 93 Ind. 423; *Stringer* v. *Northwestern Mut. Life Ins. Co.*, 82 Ind. 100; *Sims* v. *Everhardt*, 102 U. S. 300.

Some of these cases expressly hold that a reasonable time must depend upon the circumstances of each particular case; in some it is held that as long as coverture lasts and suit is not required to be brought, disaffirmance is not necessary. Coverture, therefore, is a circumstance considered in determining when disaffirmance should take place. Why is this true? Evidently because coverature permitted delay in instituting suit to avoid the contract annulled by the infancy, and by the act of disaffirmance.

Since September 19th, 1881, when the new code took effect, the element of coverture, not being a disability, was no longer the legal cause of delay in enforcing the annulment of the deed. But there was another obstruction to the action to annul the deed, to quiet title and for

possession, more potent than the element of coverture, and that was that her interest was inchoate from the execution of the deed until the death of her husband, when, for the first time, a cause of action accrued for the quieting of her title and the enforcement of that interest, which, through all of the years from the execution of the deed, had been contingent merely, and could by no means become absolute except by the death of her husband. Disaffirmance could lend no force to her rights. The statute of limitations controlling actions to quiet title did not begin to run against her until in 1891.

As said in *Stringer* v. *Northwestern Mut. Life Ins. Co.*, *supra:* "There is no reason in principle for saying that the right to disaffirm shall be cut off by lapse of time short of the period prescribed in the statute of limitations, for bringing an action to recover the property, unless it be on the principles of estoppel, and it must be an exception to the ordinary rule if there can be an estoppel where there has been no change in the position of the parties in respect to the matter in dispute, detrimental to the one who pleads the estoppel."

The reason for the requirement that such contracts be disaffirmed, as we have stated it, is not of the essence of the infant grantor's rights; it is the infancy that gives the right to avoid the deed; disaffirmance is but one of the steps in the direction of such avoidance.

Whatever may be said of the effect of the removal of the disability of coverture upon the avoidance of deeds by infants, where their interests conveyed are not simply inchoate but are absolute, we are of the opinion that it does not change the rule existing before such removal as to those interests that are inchoate and against which the statute of limitations does not begin to run until the happening of some contingency making such interests absolute and permitting an action for their enforcement.

Cincinnati, Indianapolis, St. Louis and Chicago Ry. Co. *v.* Grames.

As to the element of estoppel urged, the case of *Richardson* v. *Pate, supra,* is decisive. Estoppel did not take place by any acts done while a minor or while the disability of coverture existed, and none are alleged as having been done since her majority or since the removal of the disability of coverture.

Finding no error in the record for which the judgment of the lower court should be reversed, the same is, in all things, affirmed.

Filed Dec. 19, 1893.