IN THE

# SUPREME COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1917, AND MAY AND
NOVEMBER TERMS, 1918, IN THE ONE HUNDRED
FIRST AND ONE HUNDRED SECOND YEARS
OF THE STATE.

---

BOWERS ET AL. *v.* LILLIS.

[No. 22,500. Filed April 24, 1917. Rehearing denied December
18, 1917.]

1. DESCENT AND DISTRIBUTION.—*Interest of Wife in Husband's
Realty.* — *Sale in Bankruptcy.* — *Effect.*—*Statutes.*—After the
sale of a bankrupt's real estate by his assignee in 1869, and
during the life of the bankrupt, his wife held an inchoate in-
terest in the lands sold, which, upon his death, she surviving
him, ripened into a fee-simple interest under §3014 Burns 1914,
§2483 R. S. 1881, providing that one-third of the husband's
realty shall descend to the widow, §3029 Burns 1914, §2491
R. S. 1881, as to the widow's rights in her husband's real estate,
and §3037 Burns 1914, §2499 R. S. 1881, concerning the wife's
rights in case of conveyances and judicial sales of her hus-
band's property. p. 7.

2. DESCENT AND DISTRIBUTION.—*Interest of Wife in Husband's
Realty.*—*Statute.*—Under §3029 Burns 1914, §2491 R. S. 1881,
prescribing a widow's rights in her husband's realty, and §3037
Burns 1914, §2499 R. S. 1881, relating to the wife's rights in
case of conveyances and judicial sales of her husband's prop-
erty, the wife, upon the death of her husband, becomes vested
of a fee-simple title in one-third of the lands of which he had
been seized during coverture and in the conveyance of which
she had not joined in due form of law, or which had been sold
during their marriage at judicial sale. p. 8.

3. DESCENT AND DISTRIBUTION.—*Interest of Wife in Husband's Realty.—Judicial Sale.—Statute.*—A conveyance of land by the registrar to an assignee in bankruptcy is a judicial sale within the meaning of §3037 Burns 1914, §2499 R. S. 1881, prescribing the wife's rights in case of conveyances and judicial sales of her husband's realty. p. 8.

4. DOWER.—*Character of Widow's Rights.—Statutes.*—The title acquired by a widow under the provisions of §3029 Burns 1914, §2491 R. S. 1881, prescribing the widow's rights in her husband's realty, and §3037 Burns 1914, §2499 R. S. 1881, concerning the wife's rights in case of conveyances and judicial sales of her husband's property, does not come to the widow by descent or as a part of her husband's estate but as a purchaser by virtue of her marital rights. p. 8.

5. DOWER.—*Right of Wife in Husband's Realty.—Bankrupt Sale of Husband's Realty.—Title of Widow.*—Where a husband became bankrupt and his lands were sold by his assignee, a one-third interest in the realty belonged to the widow upon his death by virtue of her marital rights, and could not be disposed of by the husband's will, since all his interest in the land was divested by the sale in bankruptcy. p. 9.

6. WILLS.—*Election by Wife.—Common Law.*—At common law a widow was not required, under all circumstances, to elect between a beneficial provision of her husband's will and her rights to dower in his land, as a devise or bequest in the will of a husband in favor of his wife was held to be a provision for her in addition to her dower rights in his land and she could accept both, unless it appeared by the express terms of the will that the provisions thereof were intended to be in lieu of her dower rights, or unless such intention must necessarily be inferred from the terms and conditions of the will. p. 10.

7. WILLS.—*Election by Widow.—Statute.*—Under §3043 Burns 1914, Acts 1885 p. 239, the widow is required to elect between the provisions of her husband's will and her statutory rights in his lands, but she cannot take both unless such an intention plainly appears from the will. p. 10.

8. WILLS.—*Election by Widow.—Effect.—Statute.*—By electing, in accordance with the requirements of §3043 Burns 1914, Acts 1885 p. 239, to take under the provisions of her husband's will in her favor, instead of her statutory rights in his lands, the widow renounced all the rights which the state gave her in such lands, where the will did not indicate a clear intention that the widow should receive the benefits therein provided for her in addition to her statutory rights; and by such election she relinquished her rights under the statutes to all lands whereof her husband had been seized of an estate of inheritance at any

time during their marriage, including lands sold at a sale in bankruptcy in 1868, so that she would transmit no title in such lands to her heirs. pp. 11, 13, 14.

9. WILLS.—*Election by Widow.—Effect under Common Law.*— At common law, where a widow was put to her election as between the provisions of her husband's will in her favor and her dower rights in his lands, she was required to make her choice of one to the exclusion of the other as a whole. p. 12.

10. WILLS.—*Election by Widow. — Effect. — Statutes.*—When a widow is put upon her election as between the provisions of her husband's will in her favor and her statutory rights in his lands under §§3014, 3029, 3037 Burns 1914, §§2483, 2491, 2499 R. S. 1881, her choice of one operates as a relinquishment of the other as a whole, and this rule is not changed by the provisions of §3043 Burns 1914, Acts 1885 p. 239, relating to election by a widow, which does not restrict the effect and operation of such an election to lands of which the husband died seized. (*McClanahan* v. *Williams* [1893], 136 Ind. 30, distinguished.) pp. 12, 13.

From Lake Circuit Court; *Henry A. Steis*, Special Judge.

Action by Thomas F. Lillis against John O. Bowers and others. From a judgment for plaintiff, the defendants appeal. (Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) *Affirmed.*

*John O. Bowers, Armanis F. Knotts* and *John H. Gillet*, for appellants.

*Spencer L. Adams, Frank B. Pattee* and *J. Kopelke*, for appellee.

LAIRY, C. J.—Appellee Lillis brought this action in May, 1907, to quiet title to lots Nos. 1 to 9, inclusive, in block No. 13 in the Chicago, Tolleston Land and Investment Company's Fourth Addition to Tolleston and to two other lots in another addition, all of such real estate being situated in what is now the city of Gary, Indiana. Upon a trial a decree was rendered in favor of Lillis and against the several defendants named, after which a new trial as of right was obtained. The

cause came on for hearing again in 1910 before a special judge upon the issues formed by the usual complaint to quiet title and separate answers in general denial filed by the defendants Bowers, Spindler and Knotts. The court rendered a special finding of facts and announced its conclusions of law thereon adjudging appellee Lillis to be the owner in fee of the lots in controversy and quieting his title to the same as against the defendants named who are now the appellants.

By the errors correctly assigned appellants question the trial court's action in overruling their several motions for a *venire de novo* and their motion for a new trial; they also question the correctness of the court's conclusions of law upon the special finding.

The finding discloses in brief the following facts: Richard K. Swift in the year 1868 was the owner of a certain tract of land in Lake county, a part of which land is now the lots in dispute. In February of that year he was adjudged a bankrupt by the United States District Court and all of his estate, including this land, was duly ordered sold. Thereupon his assignee by deed sold and conveyed the same to Aaron N. Hart in 1869. In 1884 said real estate was set off to Martha R. Hart, his widow, in an action in partition, Aaron N. Hart having theretofore died intestate. A deed for the land was then made by her to the Chicago, Tolleston Land and Investment Company in 1890, which company at five different dates during that year acknowledged and recorded from this land plats of what were denominated respectively after the First, the Second, Third, Fourth and Fifth additions to the town of Tolleston. On August 2, 1890, the land company made and executed to the appellant Spindler a deed to lots Nos. 3 to 9, inclusive, in block No. 13 of the company's Third addition and such deed was recorded, certain erasures and insertions appearing on the record in ref-

erence to the number of the addition, in which the lots were situated. Later Spindler executed a quitclaim deed to the lots here in controversy, which are located in the Fourth addition as above stated, to his codefendant Bowers.

Appellee Lillis purchased of the land company on December 2, 1895, lots Nos. 1 to 9, inclusive, in block No. 13 in said company's Fourth addition, a deed for which was duly recorded nine days later. At the time the purchase was made and up until the deed of Spindler to Bowers in 1906, Lillis had no knowledge of any claim of Spindler to such numbered lots in the Fourth addition.

Richard K. Swift died in 1883, leaving a will disposing of his estate, and leaving a widow, Melissa A. Swift, who had been his wife prior to 1868 and remained such from that time on, and also three daughters of himself and Melissa A. Swift. The will was probated and the estate duly administered, the widow accepting from the executor under the provisions of the will all of the estate except what had been used for the expense of administration. Melissa A. Swift died intestate in 1895 without having remarried and in 1907 her heirs and the husbands of such as were married executed to Charles Surprise a deed conveying their undivided one-third interest to the real estate in controversy. This interest Surprise then conveyed to appellant Knotts, in 1908.

It thus appears as between Lillis and Knotts that Richard K. Swift is the common source of title, while as between Lillis and Bowers and Spindler the land company is the common source through which claims to title are made.

In determining the controversy as to title as between Lillis on the one hand and Spindler and Bowers on the other, it is not necessary to look beyond the deeds exe-

cuted by the land company. The deed to Spindler, through whom Bowers traces his title, was executed on August 2, 1891, and recorded within forty-five days thereafter in the recorder's office of Lake county, Indiana, while the deed to Lillis was executed and recorded more than five years later. It is the claim of Spindler and Bowers that the deed to Spindler described and conveyed the same lots which were described in the deed later executed to Lillis and that for this reason the latter deed conveyed no title, while it is the claim of Lillis that the deed to Spindler did not describe the lots later conveyed to him (Lillis), but described lots ˙in another addition. An issue of fact was thus joined upon which the court found for Lillis, and, while there is a conflict, the evidence is sufficient to sustain the finding.

Appellant Knotts claims title to one-third of the land which ˉwas formerly owned by Richard K. Swift and transferred by his assignee in bankruptcy to Hart. This claim is based upon a deed executed by the heirs of the widow of Swift to Charles L. Surprise, from whom Knotts later received his deed. The deed from the heirs of the widow of Swift recites that the grantors are the sole and only heirs of Melissa A. Swift, who departed this life in the year 1895, and who was at that time the widow of Richard K. Swift, deceased. Such deed describes the land formerly owned by Richard K. Swift lying north of the Michigan Central Railroad in the northeast quarter of the northeast quarter of section ·9, township 36 north, range 8 west, and recites that the land described was sold on March 8, 1869, as the land of Richard K. Swift, a bankrupt, by Carol Gaytes, his assignee, and that Melissa A. Swift, who was at that time his wife, survived her husband and thereby became the owner in fee simple of the undivided one-third of said real estate.

It is the theory of appellant Knotts that Melissa A.

Swift upon the purchase of said land by her husband acquired an inchoate interest in the undivided one-third thereof as purchaser; that this interest of the wife was not divested by the conveyance of the land by the registrar in bankruptcy but remained inchoate during the lifetime of her husband, and that upon his death it became a vested fee-simple interest of which she died seized, transmitting it to her heirs, from whom Knotts acquired it as before stated. The sale by the assignee in bankruptcy occurred in 1869 and it was not, therefore, affected by the statute passed in 1875 by which it was provided that, upon judicial sale of lands in which a married woman had an inchoate interest by virtue of her marriage, such interest should become a vested absolute interest by which she was entitled to immediate possession and with reference to which she might maintain proceedings in partition. Acts 1875 p. 178, §2508 R. S. 1881. As this statute was not in existence in 1869, the sale by the assignee did not affect the interest of Melissa A. Swift in the lands, neither operating to divest such interest nor to vest it absolutely. After such sale and during the life of her husband, she held an inchoate interest in the lands so sold which upon his death if she survived him would ripen into a fee-simple interest under the statute in force at the date of his death. §§3014, 3029, 3037 Burns 1914, §§2483, 2491, 2499 R. S. 1881.

Appellee practically concedes that Melissa A. Swift upon the death of her husband became vested of a fee-simple interest in one-third of the land in question unless she is barred from claiming the same by her election to accept the provisions made for her by her husband's will. By the terms of the will of Richard K. Swift as shown by the special findings, all of his property, both real and personal, was given to his wife in trust for herself and their children to hold, use and

invest, and apply the money and value thereof to maintain and support herself and their children. The findings show that upon the settlement of her husband's estate Melissa A. Swift received under the terms of her husband's will and receipted for all of the estate of Richard K. Swift except what had been expended in the settlement of the estate.

Under the provisions of §3029 and §3037, *supra*, Melissa A. Swift, upon the death of her husband, became vested of a fee-simple title in one-third of the

2.  lands of which he had been seized during coverture and in the conveyance of which she had not joined in due form of law, or which had been sold during their marriage at judicial sale. The land in question having been conveyed by the registrar to the

3.  assignee in the bankruptcy proceedings of Richard K. Swift during his marriage to Melissa A. Swift the sections of the statute apply, as such a sale had been held to be a judicial sale within the meaning of §3037, *supra*. *Roberts* v. *Shroyer* (1979), 63 Ind. 64; *McCracken* v. *Kuhn* (1880), 73 Ind. 149. These cases were decided after the act of 1875 became effective, and an attempt is made to distinguish them on that ground, but the point is not well taken for the reason that the latter act did not change the nature or extent of the interest of the wife in such lands of her husband, but only changed the time at which such interest should become vested by providing that it should vest at the date of the judicial sale instead of at the date of the husband's death. A title acquired under the provisions of these statutes does not come to the

4.  widow by descent or as a part of her husband's estate, but as a purchaser by virtue of her marital rights. The question presented is, Was Melissa A. Swift required to elect between the beneficial provisions of her husband's will and the lands thus acquired? The

one-third interest in the land in question did not
5.    constitute a part of Richard K. Swift's estate at
the time of his death and could not be disposed
of by his will, for all of his interest there had. been di-
vested by the sale in bankruptcy.    It belonged to· his
widow upon his death by virtue of her marital rights.
*May* v. *Fletcher* (1872), 40 Ind. 575.    The case also
decides that the interest which a widow takes in the
lands of which her husband was seized at the time of
his death descended to her as his heir under the pro-
visions of §3014 Burns 1914, *supra*.    It thus appears
that the lands which a widow may acquire under our
statutes by virtue of her marriage relation are divided
by such statutes into three classes.    The first class in-
cludes the lands of which the husband was seized at the
time of his death.    §3014, *supra*.    The second includes
all lands which were owned by him at any time during
their coverture and by him aliened during said time
without his wife joining in the conveyance in· due form
of law.    §3029, *supra*.    The third class includes all lands
which were owned by the husband at any time during
their coverture and which, during such time, were sold
at judicial sale as a result of proceedings not affecting
the wife's interest therein.    §3037, *supra*.    Assuming
that a widow in a supposed case was entitled to take
an interest in separate parcels of land falling within
each of the three classes, the interest she would acquire
to the land in each case would be the same, a fee simple
in the undivided one-third.    As to lands of the first
class she would acquire her title by descent as the heir
of her husband, but as to the second and third classes
she would acquire her title by purchase by virtue of her
marital rights and not as the heir of her husband.    As
to the first and second classes the title of the wife would
vest at the same time and by virtue of the happening
of the same event, to wit, the death of her husband, and

this would also be true as to lands falling within the third class where the judicial sale which divested the husband's title occurred prior to the taking effect of the act of 1875, but by virtue of that act her title as to the lands falling within the third class becomes absolute as of the date of such a sale made since the act went into force.

The equitable doctrine of election must now be considered with regard to its nature and effect and with respect to its application to the case in hand. By the statute of 1852 the common-law right of the surviving wife to dower in husband's lands was abolished and more liberal provisions were made for her benefit. This statute and others since passed upon the subject confer upon her the statutory rights in lands which she now enjoys. At common law a widow was not re-

6. quired under all circumstances to elect between a beneficial provision of her husband's will and her rights to dower in his land. A devise or bequest in the will of a husband in favor of his wife was held to be a provision for her in addition to her dower rights in his land and she could accept both and she was not required to elect between them, unless it appeared by the express terms of the will that it was intended to be in lieu of such dower, or unless such intention must necessarily be inferred from the terms and conditions of the will. *Fuller* v. *Yates* (1840), 8 Paige (N. Y.) 325. Under our statute the widow is required to

7. elect between the provisions of her husband's will and her statutory rights in his lands, but she cannot take both unless it plainly appears by the will to have been the intention of the testator that she should have both. §3043 Burns 1914, Acts 1885 p. 239. The rule for determining whether or not a widow is required to elect as established by this statute is the re-

verse of the rule as it existed at·common law.  At common law she could not be required to elect unless it appeared by the express terms of the will that the testator intended that such election should be required, or unless such intention must be unequivocally and unmistakably inferred from the provisions of the will.  Under our statute she is required to elect unless it clearly appears that it was the intention of the testator that she should not be required to do so.  From a consideration of the will of Richard K. Swift it cannot be reasonably claimed that it indicates a clear intention on his part that his widow should receive the benefits therein provided for her in addition to her statutory rights in his lands.  Under the statute she was required to elect and she did elect by accepting the provisions of the will in her favor.  By so electing she renounced all rights which the state gave her in the lands of her late husband.

It is asserted by appellant Knotts that the effect of her election was to renounce her statutory interest in all of the lands of which her husband died seized and which descended to her as his heir under the provisions of §3014, *supra,* but that such election did not operate as a remuneration of her title as purchaser by virtue of her marital rights in other lands of which he had been seized during their marriage and which had been disposed of during coverture either by sale on execution or by a conveyance in which she did not join.  This claim is based largely upon §3043, *supra.*  Attention is called to the words "in lieu of her right to lands of her husband," and also the words "or whether she will retain the right to one-third of the land of her late husband," as used in the statute, and it is asserted that such expression can refer only to the lands owned by the husband at the time of his death.  This construc-

tion has been adopted ·in Michigan and Pennsylvania, in which states it has been held under a similar statute that an election by a widow to take under the will of her deceased husband operates as a renunciation of her title to one-third of the lands of which he died seized only. *Borland* v. *Nichols* (1849), 12 Pa. St. 38, 51 Am. Dec. 576; *Westbrook* v. *Vanderburgh* (1877), 36 Mich. 30.

At common law when a widow was put to her election as between the provisions of her husband's will in her favor and her dower rights in his lands, she was 9. required to make her choice of one to the exclusion of the other as a whole. If she elected to take dower in his lands, she thereby renounced every provision of the will in her favor, and if she accepted the provisions of his will that operated as a renunciation of her rights in all of the lands of which she was endowable by virtue of such marriage. *Allen* v. *Pray* (1835), 12 Me. 138; *Steel* v. *Fisher* (1832), 1 Edw. Ch. (N. Y.) 435; *Spalding* v. *Hershfield* (1894), 15 Mont. 253, 39 Pac. 88; *Fairchild* v. *Marshall* (1889), 42 Minn. 14, 43 N. W. 563.

By the statutes of this state the widow is given a fee-simple interest in the lands of her deceased husband as a substitute to her rights of dower, and the lands of her husband which are subject to this statutory right include not only those of which he died seized but also those of which he was seized during the intermarriage relation and in the conveyance of which she had not joined, as well as those to which his title had been divested by judicial sale. When a widow is put upon her election as between the provisions of her husband's will in her favor and her statutory rights 10. in his land, her choice of one operates as a relinquishment of the other as a whole. By electing to take under the will of her husband, the widow relinquished

her statutory, or common-law right to dower in all of the lands whereof her husband had been seized of an estate of inheritance at any time during their intermarriage; and so also, where a widow is put upon her election as between the provisions of her husband's will in her favor on the one hand and the rights given her by our statutes in the lands of her late husband on the other, her choice of the former operates as a renunciation of her statutory rights in all of the lands of which her husband was seized at any time during their intermarriage. This conclusion is supported by the better reason as well as by the weight of authority.

The rule is not changed by the provisions of §3043, *supra,* relating to election by a widow. Such words as "his lands," "lands of her husband," "lands of her late husband," etc., as used in the statutes similar to this, have been constructed as being properly applicable to lands owned by the husband at any time during the marriage; and it has been held that the use of such words in statutes of this kind does not have the effect of restricting the effect and operation of such an election to lands of which the husband died seized. *Buffington* v. *Fall River Nat. Bank* (1873), 113 Mass. 246; *Sanders* v. *Wallace* (1897), 118 Ala. 418, 24 South. 354; *Haynie* v. *Dickens* (1873), 68 Ill. 267; *Corry* v. *Lamb* (1887), 45 Ohio St. 203, 12 N. E. 660; *Evans* v. *Pierson* (1855), 9 Rich. (S. C.) 9.

The attention of the court is called to the case of *McClanahan* v. *Williams* (1893), 136 Ind. 30, 35 N. E. 897. The question really decided in that case was the sufficiency of a pleading under which a widow sought to recover a one-third interest in lands which her deceased husband had disposed of during their marriage by a conveyance of which she did not join in due form of law. The court held that a failure to allege that the

husband died intestate did not render the pleading insufficient for want of facts. It was said in substance that intestacy was the rule rather than testacy and that, in the absence of any allegation on the subject, it would be assumed that the husband died without leaving a will and that she had not been put to an election. No question as to the effect of an election by the widow was before the court, and all that is said in the opinion on that subject is so clearly *dictum* that it cannot be regarded as binding on the court.

By electing to take the provisions of her husband's will in her favor, Melissa A. Swift renounced her rights under the statutes to all of the lands of Richard K. Swift, deceased, including the lands out of which the lots in controversy were later carved. She transmitted no title in such lands to her heirs and appellant Knotts could derive no title through a deed from them. The trial court did not err in its conclusions of law, and there is some evidence to sustain every material fact in the finding.

In view of the conclusion reached, other questions discussed by appellants are unimportant.

Judgment affirmed.

Spencer and Erwin, JJ., dissent.

Note.—Reported in 115 N. E. 930. Dower: effect of bankruptcy on rights of bankrupt's wife, 26 L. R. A. (N. S.) 1180, 19 Ann. Cas. 1087. See under (1) 7 C. J. 242, 367, 14 Cyc 947, 5 Cyc 384; (7, 8) 40 Cyc 1988.